**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CRIMINAL CASE NO. 22-35-DLB-CJS**

**UNITED STATES OF AMERICA**                                                              **PLAINTIFF**

**v.**                                                **MEMORANDUM ORDER**
                        **ADOPTING REPORT AND RECOMMENDATION IN PART**

**ADAM M. LANG**                                                                          **DEFENDANT**

                        * * * * * * * * * * * * * *

This matter is before the Court upon the December 19, 2022 Report and Recommendation (R&R) of United States Magistrate Judge Candace J. Smith (Doc. # 29), wherein she recommends that the Court deny Defendant Adam Lang's Motion to Suppress (Doc. # 18).  Defendant having filed Objections (Doc. # 30) and the United States having filed its Response (Doc. # 31), the R&R is ripe for the Court's consideration.  For the reasons that follow, the R&R is **modified and adopted in part** as the opinion of the Court, Defendant's Objections are **sustained in part and overruled in part**, and the Motion to Suppress is **denied**.

## I.      FACTUAL BACKGROUND

On March 2, 2022, Highland Heights Police Officer Patrick Feldman stopped a white Buick LeSabre on Interstate 275 in Campbell County, Kentucky, for a cracked windshield and expired registration.  (Doc. # 26 at 7).  The vehicle quickly pulled over, and because of the narrow shoulder and heavy traffic, Officer Feldman approached the passenger side of the vehicle.  (*Id*. at 7-8).  As he approached, he noticed that the car

1

contained a second person sitting in the front passenger seat. (*Id*. at 8). This passenger was the Defendant, Adam Lang. (*Id*. at 8-9). Because the passenger side window did not function, Officer Feldman asked Lang to open the door so he could speak to the driver, and Lang complied. (*Id*. at 8). When he did so, Officer Feldman noticed a small digital scale in the door. (*Id*. at 9).

Officer Feldman requested proof of insurance from the driver and identification from both occupants. (*Id*.). Traffic noise was so loud that Officer Feldman had difficulty communicating with the driver and asked her to repeat herself multiple times. (*Id*. at 11, 38; *see also* 29 at 11). Lang refused to identify himself, either by supplying a driver's license or by giving his name, claiming that as a passenger he was not required to do so. (*Id*. at 9-10). Because Officer Feldman could not safely stand on the driver's side of the car to communicate with the driver, he asked her to get out of the vehicle. (*Id*. at 10-11). He testified that both occupants appeared nervous, and that the driver seemed reluctant to get out of the car. (Doc. # 26 at 38-39). As Officer Feldman was about to get the driver out of the vehicle, Officer Rowland arrived, and Feldman asked Rowland to get Lang out of the vehicle and identify him. (*Id*. at 11). Officer Feldman testified that he would not have done this if he had not seen the scale, which caused him to suspect drug activity. (*Id*. at 39-40).

Once Lang and the driver were out of the car, Officers Feldman and Rowland interviewed them separately. Officer Feldman talked with the driver for about eight minutes. (Doc. # 29 at 3). During that time, he informed her that he had seen a scale in the passenger side door and asked her if she would consent to a search of the car. (Doc. # 26 at 13-14). Apparently surprised by the presence of the scale, the driver consented.

(*Id*.).  She also consented to a search of her person by a female officer.[1]  (*Id*.).  When Officer Feldman asked her what she knew about Lang's drug use habits, she replied that she had heard he used methamphetamine in the past.  (*Id*.).  Officer Feldman testified at the evidentiary hearing that she described Lang as "a habitual methamphetamine user." (*Id*.).

Officer Feldman then thoroughly searched the vehicle.  During the search, he discovered various items of drug paraphernalia in the car and the bags within it, including a digital scale, unused capped syringes, premeasured vials of water, and cotton swabs with the cotton pulled off.  (*Id*. at 17-18).  Officer Feldman testified that although none of these items, standing alone, qualified as an item of drug paraphernalia, taken together and with his experience, they were strong evidence of drug use.  (*Id*. at 17).  For example, cotton from a cotton swab is often used to filter heroin through premeasured vials of water for administration via syringe.  (*Id*. at 17-18).  When confronted with this evidence, the driver appeared shocked and vehemently denied that it belonged to her, protesting that Lang must have placed it there.  (*Id*. at 21-22).

Meanwhile, Officer Rowland interviewed Lang, who initially identified himself as "Adam Lang" as he was getting out of the car, though due to traffic noise, Officer Rowland had difficulty hearing him.  (*Id*. at 49).  Lang denied having any form of identification and refused to identify himself further.  (*Id*.).  Officer Rowland persisted, taking out a pen and paper to take down Lang's identification, and Lang continued to refuse to identify himself or confirm his previous identification.  (*Id*.).  Eventually, he relented and identified himself as "Nicholas Jason Lang."  (*Id*. at 51, 108-09).  The driver also stated that she knew Lang

---

[1]     A female officer conducted a search of the driver and found no contraband.  (Doc. # 26 at 14-15).

as "Nick." (Doc. # 29 at 7). Officer Rowland warned Lang that providing false identification was a crime in Kentucky, and asked him to confirm his name. (*Id*. at 52). When he did so, Officer Rowland ran the provided information through the database and returned no results. (*Id*. at 53). This conflicted with Lang's earlier admission that he had served time in prison for assault. (*Id*. at 53-54).

When Officer Feldman completed the consensual search of the car, he confronted Lang with the evidence he collected. (*Id*. at 19). Lang stated that the scale was for "measur[ing] coins that he sells and collects." (*Id*.). Coins were found in the car during the search. Lang further argued that the premeasured water packets were for the driver's daughter's breathing treatment. (*Id*. at 19). Officer Feldman noted that they were consistent with the premeasured vials handed out at needle exchanges to be used for administering drugs. Lang argued that the needles were used for administering insulin. (*Id*. at 21). Officer Feldman found these excuses unconvincing, and informed Lang that he had probable cause to arrest him for possession of drug paraphernalia and that he would be searched if arrested. (*Id*. at 19). After talking with the driver and considering her response, the officers decided they had probable cause to search and arrest Lang. (*Id*. at 22). They did so, discovering methamphetamine, a small quantity of fentanyl, and a glass pipe for using methamphetamine, among other personal items. (*Id*. at 55-56). Lang was promptly arrested (*id*. at 56) and later indicted. (Doc. # 29 at 7).

## II.   PROCEDURAL HISTORY

On August 1, 2022, Lang filed a Motion to Suppress all evidence obtained from the March 2022 traffic stop. (Doc. # 18). He argued that the police officers violated his Fourth Amendment rights by making him exit the vehicle for reasons other than officer safety,

effectively abandoning the traffic stop and pursuing a criminal investigation instead. (*Id*. at 4-5).  He argues that because the scope of the stop was unreasonably expanded, all evidence against him must be suppressed.  (*Id*.).  The United States contends that police have a categorical right to remove drivers and passengers from a vehicle during a traffic stop and may conduct any investigation so long as it does not extend the duration of the stop.  (*See* Doc. # 19 at 7-8).  The United States further argues that the digital scale gave the officers reasonable suspicion to remove Lang from the car to investigate further. (*Id*. at 8).

On September 26, 2022, Magistrate Judge Smith held an evidentiary hearing on Lang's Motion.  Officers Feldman and Rowland testified at this hearing, and the parties stipulated to the bodycam footage from both officers.  (*See* Docs. # 20 and 26). Magistrate Judge Smith granted Lang's motion for post-hearing briefing, and the parties filed additional briefing.  (Docs. # 27 and 28).  Magistrate Judge Smith entered her R&R on December 19, 2022, recommending that the Motion to Suppress be denied.  (Doc. # 29).  Lang objected (Doc. # 30) and the United States responded.  (Doc. # 31).

## III.    REPORT AND RECOMMENDATION

In recommending that Lang's Motion to Suppress be denied, Magistrate Judge Smith addressed three main issues raised by the parties: whether the officers impermissibly extended the stop, whether they nevertheless had reasonable suspicion to do so, and whether the officers had probable cause to search Lang's person after the vehicle search.  (*See generally* Doc. # 29 at 9-20).

First, Magistrate Judge Smith found that the officers did not prolong the traffic stop beyond what is allowed by the Fourth Amendment because officers have plenary power

to remove occupants from a car during a traffic stop. (*Id*. at 10). Further, tasks related to the original traffic stop were ongoing, and therefore the questioning of Lang did not impermissibly extend the duration of the stop. (*Id*. at 12). It is well-settled that police officers may, without reasonable suspicion, remove the driver and passengers from a vehicle during a traffic stop if necessary for officer safety. (*Id*. at 9-10); *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977); *Maryland v. Wilson*, 519 U.S. 408, 415 (1997). "This is so, in large part, because traffic stops are fraught with danger for police officers." *United States v. Pacheco*, 841 F.3d 384, 390 (6th Cir. 2016) (quotations omitted). However, as Magistrate Judge Smith noted, removal for reasons other than officer safety are impermissible as they expand the scope of the traffic stop and constitute a "detour" requiring reasonable suspicion. (Doc. # 29 at 10).

Lang relied heavily on the recent Sixth Circuit opinion *United States v. Whitley* in his arguments to the contrary. 34 F.4th 522 (6th Cir. 2022). In *Whitley*, police officers stopped the defendant for a minor traffic violation. *Id*. at 526. When they approached the car, officers noticed a scale in his lap. *Id*. at 527. The officer asked Whitley about it, and then conferred with his fellow officer. *Id*. He then returned and pulled Whitley out of the car and questioned him about the scale. *Id.* The court concluded that the officers abandoned any effort to investigate the original offenses that necessitated the stop, and turned their attention exclusively to an unrelated drug investigation. *Id*. at 530. They therefore violated the Fourth Amendment when they removed Whitley from the vehicle solely to investigate the scale he had on his lap. *Id*. at 530-31. While the evidence was ultimately not suppressed for other reasons, the court did find a Fourth Amendment violation. *See id*. at 535. In her R&R, Magistrate Judge Smith overruled Lang's *Whitley*

6

objections.  Based on Officer Feldman's testimony at the evidentiary hearing, she found that Lang and the driver were both removed from the vehicle for safety reasons. (Doc. # 29 at 10-11).

Second, Magistrate Judge Smith found that even if the officers impermissibly prolonged the traffic stop, they were justified based on independent reasonable suspicion. (*Id*. at 13).  The circumstances of the stop created reasonable suspicion of ongoing criminal activity and it was therefore proper for the officers to continue to detain the driver and Lang.  (*Id*. at 10-11).  She found that the officers relied on the occupants' nervousness, Lang's incessant refusal to identify himself, the presence of the scale, and the driver's later statement that Lang had previously used methamphetamine, which, taken together, provided reasonable suspicion of criminal activity.  (*Id*. at 14-15).

Lang argued that nervousness, refusal to identify, and a digital scale by themselves did not constitute reasonable suspicion.  (*Id*. at 15-16).  Magistrate Judge Smith pointed out that while that is correct, reasonable suspicion is not something deduced from rigid rules, but from "commonsense judgments and inferences about human behavior."  (*Id*. at 14) (quoting *Kansas v. Glover*, 140 S. Ct. 1183, 1188 (2020)). Taking those observations together with their training and experience, Officers Feldman and Rowland had reasonable suspicion to suspect criminal activity.  (*Id*. at 17).

Finally, Magistrate Judge Smith found that the officers had probable cause to search Lang's person.  (*Id*. at 17).  Lang argued that the drug-related items found in the car after the consensual search did not constitute drug paraphernalia and therefore did not provide probable cause.  (*Id*. at 18).  Magistrate Judge Smith found that the officers possessed probable cause to search and arrest Lang based on an entirely separate

issue—his providing of false identifying information to the officers. (*Id*.). Lang had admitted to serving prison time for a state assault offense. (*Id*. at 20). However, when Officer Rowland ran the information Lang provided through his computer, it returned no results. (*Id*.). Officer Rowland testified that if someone has served time for a previous conviction, it is very easy to find them if they provide the correct information. (*Id*.). Therefore, Magistrate Judge Smith found that the officers had probable cause to arrest Lang for providing false identifying information to the officers and to search him incident to his arrest. (*Id*.).

For these reasons, Magistrate Judge Smith recommended that Lang's Motion to Suppress should be denied. (*Id.* at 20). Lang objected (Doc. # 30) and the United States responded. (Doc. # 31).

## IV.   ANALYSIS

### A.   Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B), a district court judge may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition . . . of any motion." Under Federal Rule of Criminal Procedure 59(b)(1), following a magistrate judge's recommended disposition, a party has fourteen days to file "specific written objections to the proposed findings and recommendations." The district judge is required to "consider de novo any objection to the magistrate judge's recommendation," and "may accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). Failure to object is considered waiver of the party's right to review. Fed. R. Crim. P. 59(b)(2).

Objections to a magistrate judge's recommended disposition must be "specific written objections to the proposed findings and recommendations." *Id.* This necessitates that "vague, general, or conclusory objections," will not be considered and are "tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001). Further, an objection that does "nothing more than state a disagreement with a Magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *United States v. Shephard*, No. 5:09-cr-81-DLB-EBA, 2016 WL 9115464, at *1 (E.D. Ky. Sept. 18, 2016) (quoting *VanDiver v. Martin*, 304 F. Supp. 2d 934, 938 (E.D. Mich. 2004)). A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (alteration in original) (quoting *Smith v. Chater*, 121 F.3d 709, (6th Cir. 1997) (unpublished table decision)).

### B.    Defendant Lang's Objections

Lang raised three objections to Magistrate Judge Smith's R&R. (*See* Doc. # 30). First, he argues that the officers did not remove Lang from the vehicle for safety reasons, but to facilitate a separate criminal drug investigation. (*Id*. at 1-4). Second, he argues that the information known to the officers at the time they removed him from the car was insufficient to establish reasonable suspicion that criminal activity was afoot. (*Id*. at 4-5). And finally, he argues that the search of the car did not yield sufficient evidence to establish probable cause to search Lang himself. (*Id*. at 5-6). For the reasons that follow, the Court agrees with Lang's first two objections and finds that the officers' motivations in removing him from the car were not permissible under the Fourth Amendment. However, the Court disagrees that the officers did not possess probable cause to search his person

after the consensual search of the car yielded drug paraphernalia and he provided false identifying information.

### 1.    The Officers Impermissibly Removed Lang from the Car

Investigatory traffic stops are lawful under the Fourth Amendment if the officers have probable cause to believe that a traffic violation has occurred.  *United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005).  "When a traffic stop is supported by probable cause, an officer's subjective intent is irrelevant."  *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008).  However, the traffic stop must be carefully limited in both scope and duration.  *See United States v. Lott*, 954 F.3d 919, 923 (6th Cir. 2020).  The temporal duration of the stop may not be extended beyond the time required to conduct the tasks associated with the stop.  *See Hernandez v. Boles*, 949 F.3d 251, 256 (6th Cir. 2020). As the Sixth Circuit has stated, "[t]his is a bright-line rule."  *Id*.  The scope of the stop may not be expanded absent reasonable suspicion.  *Id*.  Within the time required to conduct the stop, officers may ask any questions they want.  *Arizona v. Johnson*, 555 U.S. 323, 333 (2009).  But they may not do anything they want.

Officers may remove the driver and any passengers from the vehicle because of the potentially serious threats to officer safety inherent in a traffic stop.  *See Mimms*, 434 U.S. at 111; *Wilson*, 519 U.S. at 415.  The Supreme Court's rule is categorical: "[A]n officer making a traffic stop may order passengers to get out of the car pending completion of the stop."  *Wilson*, 519 U.S. at 415.  This broad, categorical rule was significantly limited in *Rodriguez v. United States*.  575 U.S. 348 (2015).  Whereas *Mimms* and *Wilson* appear to state that officers may always remove everyone from a stopped vehicle regardless of the reason, *Rodriguez* imposes a limiting principle: officer safety.  *Rodriguez*, 575 U.S. at

355-56.

In *Rodriguez*, the Court explained that the powers of a police officer at the scene of a traffic stop depend on the purpose of the stop.  *Id*.  Because traffic stops are dealt with under a *Terry* framework, a stop may only extend as long as is reasonably necessary to accomplish the mission of the traffic stop.  *Id*. at 354.  That mission comes with certain inquiries that are typically conducted, such as checking licenses, searching for warrants, and verifying registration.  *Id*. at 355.  "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly."  *Id*.  But there are limits.  An officer's interest in his own safety extends only as far as "the mission of the stop itself."  *Id*. at 356.  "On-scene investigation into other crimes . . . detours from that mission," and "[s]o too do safety precautions taken in order to facilitate such detours."  *Id*.  In other words, even otherwise reasonable safety measures, taken for impermissible reasons, are constitutionally prohibited.[2]

The Sixth Circuit applied *Rodriguez* in *United States v. Whitley*.[3]  There, the police stopped a car for a traffic violation and noticed a scale in the driver's lap when they approached the window.  *Whitley*, 34 F.4th at 530.  Seeing it, they essentially abandoned any investigation of the traffic violations and instead pulled Whitley out of the car to

---

[2]      This is not to say that an officer can never go beyond the reason for the initial traffic stop and investigate new evidence as it arises.  He certainly can.  But it must be based on independent reasonable suspicion.  *Whitley*, 34 F.4th at 529.

[3]      The parties—particularly Lang—debate extensively over the application of *Whitley* despite the fact that it was decided by the Sixth Circuit in May 2022, over two months after the traffic stop in this case.  (*See* Docs. # 29 at 10 and 30 at 3).  However, the principles of *Whitley* find their origin in *Rodriguez* and its progeny, not in *Whitley* itself.  *See Whitley*, 34 F.4th at 529-32 (examining *Rodriguez*, *Lott*, and *Howard*).  Therefore, in light of the parties' arguments and the continued relevance of the underlying arguments themselves, the case will be addressed.

"investigate the scale real quick."  *Id*. (quotations omitted).  The Sixth Circuit found that

the officer had explicitly detoured from the purpose of the stop as prohibited by *Rodriguez*.

*Id*. (citing the court's exegesis of *Rodriguez* in *United States v. Lott*, 954 F.3d at 924).

The Court noted that "the officers . . . explicitly stated that their purpose in continuing the

stop was to investigate the scale."  *Id*. at 532 (quotations omitted).  "This meant that the

stop now became concerned with the scale and Whitley's possible drug-related activity."

*Id*.

Just as in *Whitley*, the officers here testified at the evidentiary hearing that they

removed Lang from the car because—and only because—of the digital scale which

Officer Feldman observed when he initially opened the car's door to speak to the

occupants.  The United States and Magistrate Judge Smith acknowledge that Officer

Feldman testified to removing the occupants of the car for safety reasons, and because

he could not hear their answers to his questions.  (See Docs. # 29 at 10-11 and 31 at 2).

Yet this is only partly correct.

Officer Feldman testified that he removed the *driver* because of safety reasons.

(Doc. # 26 at 10-11).  Although the prosecutor asked the questions broadly, including

both occupants, Officer Feldman answered very specifically about the driver only.  (*Id*.).

> Q.    Now, did you then have the driver and passenger exit the car?
> A.    I did.
> Q.    Why did you have them exit?
> A.    I had the driver exit the vehicle to speak with her where I could hear
> her in a better volume.
> Q.    Was it very loud on that stretch of highway?
> A.    Very.
> Q.    Was it difficult to hear them from your vantage point on the
> passenger side, speaking into the vehicle?
> A.    Yes.

Later, on cross-examination, defense counsel asked Officer Feldman about his motivations.  (*Id*. at 39-40).

> Q.      So if you didn't find the scale, would you have pulled them out of the vehicle?
> A.      No.
> Q.      So the scale was the lynchpin, so to speak, on kind of changing it from a traffic stop to we're going to do a criminal investigation into possible drugs?
> A.      Creating my reasonable suspicion, yes.

Predictably, Lang's Objections to the R&R rely heavily on this exchange.  (*See* Doc. # 30 at 1-3).  He argues that this exchange proves Officer Feldman removed him from the vehicle for impermissible reasons, whatever his reasoning was for removing the driver. (*Id*.).

The Court agrees.  Removing Lang from the vehicle to investigate the presence of the scale, without more, violates *Rodriguez's* prescription against deviating from the scope of a traffic stop.  It is the essence of a "safety precaution taken in order to facilitate [a] detour."  *Rodriguez*, 575 U.S. at 356.  Officer Feldman directly admitted as such, and this interpretation of the situation makes intuitive sense in light of the body camera footage and the arrangement of the parties at the stop.  Officer Feldman approached the car on the passenger side and spoke past Lang to the driver.  Being directly next to Lang, he seems to have had no difficulty hearing him.  Even if officers had not yet verified Lang's identity, officer safety did not justify removing him from the car.

The United States contends that so long as the officers did not temporally expand the traffic stop, then they could exercise a categorical right to remove a vehicle's occupants.  (*See* Doc. # 31 at 1-2).  They also argue that *Whren* rules out any subjective analysis of police intentions when a court examines the justification for an action.  (Id.).

13

These arguments will be addressed in turn.

The parties argue past each other on the first point.  The United States defends the R&R on the grounds of the duration of the stop.  (*See* Doc. # 31 at 1-2).  Lang attacks it on the grounds of scope, even though he styles his objection as one made to the duration of the stop.  (*See* Doc. # 30 at 1).  The United States is correct that Officer Feldman's interactions with Lang occurred simultaneously with Officer Rowland's interactions with the driver related to the traffic stop.  (*See* Doc. # 29 at 1-7).  That much is true: whatever happened to Lang, it did not extend the duration of the stop.  But that misses Lang's point.  Lang argues that removing him from the car constituted an abandonment of the original traffic stop as it pertained to him, and the commencement of a new criminal investigation.  (Doc. # 30 at 1-3).  In other words, officers expanded the *scope* of the traffic stop in violation of the Fourth Amendment.  *See Lott*, 954 F.3d at 923 ("To qualify as reasonable seizures under the Fourth Amendment, *Terry* detentions must be limited in [both] scope and duration." (quotations omitted)).  Absent reasonable suspicion of another offense, scope is limited to the "mission" of the traffic stop. *Rodriguez*, 575 U.S. at 354-56.  The issue of independent reasonable suspicion will be addressed below, but the mission of the traffic stop did not include investigating other items in the car, even if Lang had not identified himself.

The United States' second argument is made in passing but illustrates a deeper tension in the caselaw.  In their response to Lang's objections, they state that *Whren* precludes any analysis of subjective intentions in evaluating the issue.  (*See* Doc. # 31 at 2).  They point to the *Whren* Court's statement that "[s]ubjective intentions play no role in ordinary, probable cause Fourth Amendment analysis."  *Whren v. United States*, 517 U.S.

806, 813 (1996).  And *Whren* is full of such statements made while elaborating on the underlying holding that pretextual police stops are permissible under the Fourth Amendment.  That court stated that "subjective intent alone does not make otherwise lawful conduct illegal or unconstitutional." *Id*. It also stated that "a lawful postarrest search of the person would not be rendered invalid by the fact that it was not motivated by the officer-safety concern that justifies such searches." *Id*.  And that "these cases foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." *Id*.  All these statements, absent *Rodriguez* and although likely dicta, strongly counsel against any subjective analysis.

But alas, *Rodriguez* is with us, and in light of that case it is not clear that *Whren* stretches as far as the United States would have it—covering police interactions after the initial probable cause stop.  It is true that *Whren* allows for pretextual police stops so long as probable cause exists.  *Whren*, 517 U.S. at 819.  In other words, the officers' subjective motivation bears no relevance on whether the stop is actually justified by the known facts and the law, whether officers rely upon those facts or not.  But reading *Whren* in context and reviewing the cases cited by the court, it appears to apply only to the justification of probable cause traffic stops and probable cause arrests.  *See id*. at 813 ("We think these cases foreclose any argument that the constitutional reasonableness of *traffic stops* depends on the actual motivations of the individual officers involved.") (emphasis added).  *Whren's* progeny seems to continue this limitation.  *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (stating that "cases make clear that an arresting officer's state of mind . . . is irrelevant to the existence of probable cause").   When the Supreme Court allows a certain action—in this case, officers removing a vehicle's occupants—based only on

certain reasons, that necessarily requires an examination of motivation. Police are allowed to remove drivers and passengers from their cars because of the "legitimate and weighty" concerns for officer safety. *Mimms*, 434 U.S. at 110. However, "[h]ighway and officer safety are interests different in kind from the Government's endeavor to detect crime in general or drug trafficking in particular." *Rodriguez*, 575 U.S. at 357. So, when the police extend beyond the mission of highway safety and attempt to initiate a drug investigation, they step beyond the blanket of protection provided by the officer safety exception. They are now in new territory that requires independent reasonable suspicion.

It is true the officers would have been justified to remove Lang from the vehicle if they had done so for officer safety reasons, or to facilitate communication. But Officer Feldman essentially rejected that reason at the evidentiary hearing. Therefore, the Court will **sustain** Lang's first Objection.

### 2.    The Officers Lacked Reasonable Suspicion

Police officers may extend the scope or duration of a traffic stop if they have reasonable suspicion to do so. *See Rodriguez*, 575 U.S. at 357-58 (remanding for consideration of whether the dog sniff was supported by independent reasonable suspicion); *United States v. Davis*, 430 F.3d 345, 353 (6th Cir. 2005). "To satisfy the reasonable-suspicion standard, an officer must put forth more than an inchoate and unparticularized suspicion or hunch." *Whitley*, 34 F.4th at 532 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)) (quotations omitted). Instead, they must cite "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Gross*, 662 F.3d 393, 399 (6th Cir. 2011). The factors cited by law enforcement are considered in the aggregate as the totality of the circumstances.

*Pacheco*, 841 F.3d at 394 ("[T]he Supreme Court has cautioned against separating each factor from the others and finding an innocent explanation for it.").  But valid factors "may not together provide reasonable suspicion if they are all relatively minor and subject to significant qualification, particularly where the case lacks any of the stronger indicators of criminal conduct that have accompanied these minor factors in other cases."  *United States v. Stepp*, 680 F.3d 651, 665 (6th Cir. 2012) (quotations omitted).

The United States argues—and Magistrate Judge Smith agreed—that the officers had reasonable suspicion to remove Lang from the vehicle because of the presence of the scale and the driver's testimony that Lang had previously used methamphetamine. (Doc. # 29 at 17).  Lang argues that these objects were discovered after the officers had already decided to conduct a separate criminal investigation.  (Doc. # 30 at 4-5).

This objection is well taken.  At the time Lang was removed from the vehicle, Officers Feldman and Rowland knew three things about him: (1) that he was nervous, (2) that he refused to identify himself, and (3) that he possessed a digital scale. (See Doc. # 26 at 38-39, 43).  The fact that he was a previous methamphetamine user, elicited from the driver, was not discovered until both Lang and the driver had already been removed from the car.  (*Id.* at 14).  Thus, it cannot constitute part of the reasonable suspicion that justified removing Lang from the vehicle in the first place.

Nervousness cannot by itself create reasonable suspicion of a crime.  Courts generally recognize that encounters with police almost always create some form of nervousness in the person stopped.  *See, e.g.*, *United States v. Richardson*, 385 F.3d 625, 630-31 (6th Cir. 2004) ("Many citizens become nervous during a traffic stop, even when they have nothing to hide or fear.").  The Sixth Circuit has "held on numerous

occasions . . . that nervousness is an unreliable indicator, especially in the context of a traffic stop." *Stepp*, 680 F.3d at 665 (quotations omitted).  As a factor justifying reasonable suspicion, courts find it "inherently *unsuspicious*."  *United States v. Urrieta*, 520 F.3d 569, 577 (6th Cir. 2008) (emphasis in original).  However, "while [courts are] cautioned against relying too heavily on nervousness as indicia of dangerousness, [Lang's] nervousness is another factor in the totality-of-the-circumstances analysis that [may support] a reasonable-suspicion finding." *Pacheco*, 841 F.3d at 393.  The officers in this case testified that Lang and the driver both appeared nervous; in fact, they appeared unusually nervous.  (Doc. # 26 at 38-39).

That nervousness is quite understandable given the facts of the case.  Officer Feldman approached the car from the passenger side and opened the door to speak with Lang and the driver.  (*Id*. at 8).  This put him in an unusual position compared to the usual traffic stop where passengers are not expected to be as nervous.  *See Rodriguez*, 575 U.S. at 368 (Thomas, J., dissenting) ("The officer thought he was 'more nervous than your typical passenger' who 'do[esn't] have anything to worry about because [t]hey didn't commit a [traffic] violation.'").  Officer Feldman was standing directly next to Lang, with the door open, leaning down to see and converse with the driver.  These facts justify more nervousness on his part and are benign taken by themselves.

Second, the officers noted that Lang initially refused to identify himself.  (Doc. # 26 at 9).  It is uncontested that identification of the occupants of a vehicle is one of the tasks associated with a normal traffic stop. *Rodriguez*, 575 U.S. at 355.  "Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's

suspicions.  But the detainee is not obliged to respond." *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984).  "[A] citizen's refusal to listen or answer does not, without more, provide reasonable, objective grounds to suspect criminal activity." *United States v. Chivers*, No. 1:19-CR-119, 2020 WL 5757135, at *11 (S.D. Ohio Sept. 28, 2020) (quotations omitted). Only something more, added to the refusal to provide identification, can allow the refusal to help produce reasonable suspicion.  *See id*. (citing *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000)).  By itself, this refusal would not create reasonable suspicion.

Finally, the officers relied on the presence of a digital scale as reasonable suspicion that Lang was engaged in drug trafficking.  (Doc. # 26 at 17, 37).  Digital scales such as this have "long [been] recognized as tools of the drug trade." *United States v. Frazier*, 249 F. App'x 396, 402 (6th Cir. 2007).  And although explanations for the purpose of suspect objects can help remove the taint of suspicion, officers are of course not required to accept those explanations.  *See United States v. Ellis*, 497 F.3d 606, 614, (2007).

Here, when Lang was asked about the scale, he readily explained that he kept it for weighing valuable coins.  (Doc. # 26 at 19).  Officer Feldman admitted on cross-examination that there were a number of these coins in Lang's lap while he spoke to Officer Feldman, all of them individually packaged "the way a coin collector would do." (*Id*. at 26).  Nevertheless, Officer Feldman decided that the scale was itself drug paraphernalia.  (*Id*. at 34).  Yet at that moment, and based on what the officers actually knew, the strong corroborating evidence severely undermined that conclusion.

Given the weakness of the first and second factors, the Court does not believe that the third factor—the presence of a digital scale—strengthens the aggregate factors

sufficiently to support reasonable suspicion here.  Both the driver and Lang were nervous when Officer Feldman initially approached, perhaps more so than normal for a traffic stop. (*Id*. at 38-39).  Lang initially refused to identify himself.  (*Id*. at 9).  And there was a scale in the door, accompanied by a coin collection on Lang's lap.  (*Id*. at 19).  Looking at the totality of the circumstances according to the analysis above, the Court does not find "the exact opposite of ambiguity: objective and particularized indicia of criminal activity." *United States v. Beauchamp*, 659 F.3d 560, 571 (6th Cir. 2011).

Other factors relied on by the United States, such as the driver's statement about Lang's past methamphetamine use and the drug paraphernalia later found in the car, cannot be considered here because they were found after Lang was removed from the vehicle.  As Lang pointed out in his Objections, "when a court examines reasonable suspicion, factors that an officer becomes aware of after the seizure cannot be considered."  (Doc. # 30 at 5).  That is correct.  *Beauchamp*, 659 F.3d at 571 ("As reasonable suspicion to make a stop cannot be justified by facts that become apparent only after a seizure, these facts are irrelevant to the court's analysis.").

Based on the facts available to the officers when they decided to remove Lang, the Court finds that the responding officers did not have independent reasonable suspicion sufficient to justify removing Lang from the vehicle. The Court therefore **sustains** Lang's second objection to the R&R.

### 3.    The Officers Had Probable Cause to Search Lang

Lang's final objection focuses on the search of his person that revealed the methamphetamine he is charged with possessing.  (*See* Doc. # 30 at 5-6).  He argues that the objects discovered in the car did not constitute drug paraphernalia and therefore

did not give probable cause to search his person.  (*Id*.).  Magistrate Judge Smith agreed with the United States' position that the status of the discovered items was irrelevant because the officers had probable cause to arrest him for providing false identifying information.  (Doc. # 29 at 18).  Under the search-incident-to-lawful-arrest doctrine, which allows a pre-arrest search if officers finalize the arrest shortly after conducting the search, Officers Rowland and Feldman were justified in searching Lang.  (*Id*. at 20).  Lang responds that the officers testified that they searched and arrested him based on the drug paraphernalia found in the car, and therefore their search could not have been based on the false information.  (Doc. # 30 at 5-6).

The search-incident-to-lawful-arrest doctrine allows officers to conduct a "full search of an arrestee's person incident to a lawful custodial arrest."  *United States v. Robinson*, 414 U.S. 218, 234-35 (1972).  In *Rawlings v. Kentucky*, the Supreme Court extended this rule to allow officers to search *before* the arrest, provided they already have probable cause to arrest the suspect before conducting the search.  448 U.S. 98, 110-11 (1980).

Based on this law, Magistrate Judge Smith stated that Lang's providing false information to the officers was sufficient to establish probable cause for Lang's arrest.  (Doc. # 29 at 20).  The Court agrees.  Providing law enforcement officers with incorrect identifying information is a crime in Kentucky.  *See* Ky. Rev. Stat. § 532.110(1).  Officer Rowland attempted to identify Lang, who initially refused, then identified himself as "Adam Lang" (Doc. # 26 at 49), then stated his name was "Nicholas Jason Lang" when asked to confirm later.  (*Id*. at 51).  Officer Rowland warned him that providing false information to police was illegal, as he was required to do by the statute, and Lang confirmed that his

name was "Nicholas Lang." (*Id*. at 52). When Officer Rowland ran the information through his computer, it returned no results. (*Id*. at 52-54). This result was inconsistent with Lang's statement that he had served prison time for a state assault charge, because court records reliably show up when a correct name is entered. (*Id*. at 53). While Lang certainly had the right to remain silent, once he decided to identify himself, he was under an obligation to do so truthfully. At this point the officers had probable cause to arrest Lang for violation of K.R.S. § 523.100. Therefore, a pre-arrest custodial search was permissible. *See Rawlings*, 448 U.S. at 110-11.

The search would have been proper even if the officers searched Lang based on the items discovered during the search of the car. The standard for probable cause does not require that there be no other possible use for the items in question than a criminal one. All that is required is that "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949) (quotations omitted). "Determinations of probable cause are based on a review of the totality-of-the-circumstances, and involve a practical, common-sense review of the facts available to the officer at the time of the search." *United States v. Padro*, 52 F.3d 120, 123 (6th Cir. 1995) (quotations omitted).

During the search of the car, Officer Feldman discovered hypodermic needles, cotton buds with the cotton tips pulled off, premeasured vials of water, and the digital scale. (*Id*. at 17-18). He further testified that taken together and given his experience, they were strong evidence of drug use. (*Id*. at 17). Applying the probable cause analysis,

this Court is confident that observation of hypodermic needles, cotton buds with the cotton tips pulled off, pre-measured vials of water, and a digital scale, combined with the driver's statement that she knew Lang had previously used methamphetamine would be sufficient to convince any "man of reasonable caution"—let alone a trained law enforcement officer—that criminal activity was afoot.  *See Brinegar*, 338 U.S. at 175-76.  As the United States points out in its Reply, it is "immaterial that [the defendant] was ultimately charged with an offense different than that which provided the legitimate probable cause justifying the search."  (Doc. # 31 at 4) (quoting *United States v. Coleman*, 458 F.3d 453, 458 (6th Cir. 2006).

Therefore, the Court finds that there was probable cause to arrest Lang for providing false identifying information to the police, and a pre-arrest search-incident-to-arrest was therefore proper.  Further, the officers had probable cause to search Lang based on the drug paraphernalia in the car.  Lang's third objection is therefore **overruled**.

### C.    Suppression of Evidence

Suppression is an extraordinary sanction.  *United States v. Leon*, 468 U.S. 897, 906 (1984).  Although the Court agreed with two of Lang's three objections, that does not mean he is automatically entitled to suppression of the evidence against him.  *See id.* (Suppression is not "a personal constitutional right of the party aggrieved.").  And it comes with significant social costs from not allowing the use of "inherently trustworthy tangible evidence" in the prosecution's case.  *Id*. at 907.  The main purpose of suppression is deterrence, and therefore, suppression is the "last resort, not [the] first impulse."  *Hudson v. Michigan*, 547 U.S. 586, 591 (2006).  As a guide in determining whether suppression is warranted, "the court must consider the extent of such deterrence as well as the social

costs of suppressing evidence, and the benefits of deterrence must outweigh the costs." *United States v. Alderson*, No. 3:21-CR-68, 2022 WL 3356025 (M.D. Tenn. Aug. 12, 2022) (quotations omitted).

The value of deterrence in this case is very low, not least because the evidence against Lang was the fruit of a valid probable cause search-incident-to-arrest, itself justified by evidence obtained through Lang's own actions and a consensual search of the vehicle.  Based on this record, the Court has found that the police interactions with Lang morphed into a criminal investigation separate from the purpose of the original traffic stop.  *See supra* pp. 10-20.  However, as Officer Rowland was interacting with Lang, Officer Feldman simultaneously questioned the driver as a normal part of the traffic stop and investigation, which did not extend the traffic stop beyond a constitutionally permissible one.  (*See* Doc. # 26 at 11-16).  It was from this contemporaneous investigation, untainted by any improper removal from the car, that officers obtained consent to search the vehicle and learned of Lang's apparent past use of methamphetamine.  (*Id*. at 13).  In this search they discovered drug paraphernalia.  (*Id*. at 17). As that was occurring, Lang abandoned his right not to answer officer questions and elected to identify himself—albeit falsely.  (*Id*. at 51-52).  His false self-identification is untainted by the improper removal from the car; Officers Rowland and Feldman would have continued their attempts to identify Lang whether he remained in the car or not.

In the end, none of the evidence in this case would be different had Lang not been removed from the car.  There is no reason to assume that the officers would not have requested and received permission to search the car.  After all, that question was not asked because of any evidence discovered as a result of Lang's removal from the vehicle.

Therefore, the drug paraphernalia would still have been discovered and the officers would have had probable cause to search him, as discussed above.  And his removal from the car did not prompt him to provide false identifying information to the police; there is every indication that Officer Rowland would have continued to try to obtain Lang's identification even had he remained seated in the car.  Therefore, the officers would still have had probable cause to arrest him for violating Kentucky law.  Thus, the Constitutional violation does not affect the evidence against Lang at all, and suppression is not warranted.

## V.    CONCLUSION

Ultimately, Defendant has raised some meritorious legal objections to part of Magistrate Judge Smith's Report and Recommendation.  However, suppression is not appropriate for the reasons stated.  Accordingly,

**IT IS ORDERED** as follows:

(1)    The Magistrate Judge's Report and Recommendation (Doc. # 29) is **MODIFIED AND ADOPTED AS STATED HEREIN**;

(2)    Defendant Lang's Objections (Doc. # 30) to the Report and Recommendation are **SUSTAINED IN PART AND OVERRULED IN PART**; and

(3)    Defendant's Motion to Suppress (Doc. # 18) is **DENIED**; and

(4)    This matter is **scheduled** for a **Scheduling/Status Conference** on **Tuesday, January 31, 2023 at 1:00 p.m. in Covington**.

This 23rd day of January, 2023.



Signed By:

*David L. Bunning*

**United States District Judge**